IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

JOANN BORRI, DEBRA PIKE,
and JAMES PIKE,

        Plaintiffs,

v.                                                                                  No. Civ. 05-773 LH/WPL

PAULA PARKHILL,

        Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's "Motion to Dismiss Complaint or, in the alternative, Motion to Stay; to Coordinate with Duplicative Case in State Court; and to Transfer Venue to Las Cruces Division," filed September 19, 2005 (Doc. No. 3) (hereinafter "Motion to Dismiss"). This Court, having considered the motion, memoranda, pleadings, and applicable law, concludes that Defendant's motion should be granted in part and denied in part.

**I.**      **Factual Background**

Plaintiffs JoAnn Borri, Debra Pike, and James Pike ("Plaintiffs") are the children of Joseph J. Pike. Plaintiffs JoAnn Borri and Debra Pike are both residents of California; Plaintiff James Pike is a resident of Wyoming. Defendant Paula Parkhill, Joseph Pike's housekeeper, is a resident of New Mexico.

On August 5, 2003, Joseph Pike died at the age of 74. On September 3, 2003, Tommy Morgan, the personal representative of Joseph Pike's estate, filed an "Application for Informal Probate of Will and for Informal Appointment of Personal Representative" in the Sixth Judicial District Court of Grant County in order to settle Joseph Pike's estate, *see In the Matter of the Estate of Joseph J. Pike, Deceased*, No. PB 2003-30. Def.'s Mot., Ex. 2.

On July 15, 2005, Plaintiffs filed a four-count complaint in federal court. On July 18, 2005, Plaintiffs JoAnn Borri, Debra Pike, and James Pike also filed a "Petition to Set Aside Informal Probate of a Will, Petition for Formal Probate, Petition for Adjudication of Intestacy, Objection to Probate of Will and Demand for Accounting" (hereinafter "Petition") in the probate case in the Sixth Judicial District. *See* Def.'s Mot., Ex. 4.

In the federal complaint, Plaintiffs generally allege the following facts. Plaintiffs contend that Joseph Pike, prior to his death, suffered serious health problems that affected his mental acuity, resulting in general "confusion." Compl. at 2. Plaintiffs assert that on August 3, 2003, the decedent was in poor health and confused. They allege that the decedent did not sign, and moreover was not capable of signing, the Last Will and Testament dated August 3, 2003, and stamped "Draft for Discussion Only" (hereinafter "Draft Will") or the Trust Agreement Creating the Joseph Pike Living Trust, also dated August 3, 2003, and stamped "Draft for Discussion Only" (hereinafter "Draft Trust"). *See* Compl. at 2-3. According to the terms of the Draft Will and Draft Trust, the decedent bequeathed all his personal and real property to Defendant Parkhill. The Draft Will and Draft Trust specifically excluded his children, the Plaintiffs, from receiving any personal or real property upon Joseph Pike's death. *See id.*, Ex. 1 and 2. Plaintiffs allege that Defendant, Joseph Pike's caretaker with whom he had a confidential relationship, "exercised undue influence, duress and unlawful domination and control, and breached fiduciary duties, and has failed to properly account for assets transferred from Joseph J. Pike." Compl. at 4.

Additionally, Plaintiffs allege that another will, the "Arizona Will," is also not valid. According to the terms of the Arizona Will, on June 5, 1999, Joseph Pike bequeathed the Jarillas Ranch, as well as personal property, to Defendant Parkhill "if she becomes involved with me."

Compl., Ex. 5. The Arizona Will purports to be signed by "Joseph J. Pike." *Id.* Plaintiffs, however, allege that Defendant concealed the existence of the Arizona Will until after Joseph Pike's death. Plaintiffs contend that the Arizona Will is not valid because "it was the result of undue influence, duress, and unlawful domination and control, and a breach of fiduciary duty, and is void as a matter of public policy." Compl. at 4.

Plaintiffs' complaint contains four specific counts. Count 1 alleges fraud – that Defendant "deceived Joseph J. Pike and wrongfully and illegally acquired assets from Joseph J. Pike and wrongfully caused him to name her as a beneficiary." Compl. at 5. Count 2 alleges conversion and unlawful domination and control, asserting that "[a]ssets and proceeds of Joseph J. Pike and the Estate of Joseph J. Pike have been wrongfully and illegally converted, dissipated and/or spent by Paula Parkhill." *Id.* at 6. Count 3 pleads undue influence, contending that Defendant violated her fiduciary duty to Joseph Pike "by wrongfully causing the converting, dissipating or transferring of assets from Joseph J. Pike and the Estate of Joseph J. Pike, and the procurement of the Arizona Will, the Draft Will and the Draft Trust." *Id.* at 8. Count 4 demands a complete accounting of the assets of Joseph Pike, the estate of Joseph Pike, and the alleged trust of Joseph Pike. *Id.* at 9.

The Petition filed in probate court similarly alleges that Joseph Pike did not sign the Draft Will; that Joseph Pike lacked testamentary capacity on August 3, 2003, when he signed the Draft Will; and that the Arizona Will is void as against public policy. Def.'s Mot., Ex. 4. Plaintiffs specifically requested the following relief from the probate court:

> enter an order granting formal probate of the purported will, finding and ordering that Joseph J. Pike left no valid will; finding and ordering that Joseph J. Pike died intestate; enter an order for the administration of the State [sic] of Joseph J. Pike as intestate; enter an order determining the heirs of the Estate of Joseph J. Pike;

3

enter an order for an accounting of funds received and expended from the Estate of Joseph J. Pike; and for such other and further relief as the Court deems just and proper.

*Id.*, Ex. 4 at 3.

On September 19, 2005, Defendant filed a Motion to Dismiss in this case based on lack of subject matter jurisdiction. (Doc. No. 3). On October 10, 2005, Plaintiffs filed a response to the motion (Doc. No. 7), and on November 7, 2005, Defendant filed a reply (Doc. No. 9).

**II.**     **Legal Analysis**

Plaintiffs allege that this Court has federal diversity jurisdiction over their suit. 28 U.S.C. § 1332(a)(1) provides: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different states." In this case, it is undisputed that the parties have complete diversity and that the amount in controversy of the aggregate claims is greater than $75,000. Nevertheless, that does not end the inquiry, as this Court must consider whether the probate exception to federal jurisdiction deprives this Court of subject matter jurisdiction. Plaintiffs have the burden to prove the existence of subject matter jurisdiction by a preponderance of the evidence. *Moser v. Pollin*, 294 F.3d 335, 339 (2d Cir. 2002); *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

    **A.**     **Probate Exception**

The Supreme Court has held that federal courts do not have jurisdiction "to probate a will or administer an estate." *Markham v. Allen*, 326 U.S. 490, 494 (1946). Federal courts do, however, "have jurisdiction to entertain suits in favor of . . . heirs and other claimants against a decedent's estate to establish their claims *so long as the federal court does not interfere with the*

4

*probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court.*" *Id.* (emphasis added and quotation marks omitted).  The scope of the probate proceedings, a matter of state law, thus determines the limitations on federal jurisdiction.  *Rienhardt v. Kelly*, 164 F.3d 1296, 1300 (10th Cir. 1999).  The Tenth Circuit has described the test for determining the scope of the probate exception as follows:

> The standard for determining whether federal jurisdiction may be exercised is *whether under state law the dispute would be cognizable only by the probate court.  If so, the parties will be relegated to that court*; but where the suit merely seeks to enforce a claim *inter partes*, enforceable in a state court of general jurisdiction, federal diversity jurisdiction will be assumed.

*Id.* at 1300 (quoting *McKibben v. Chubb*, 840 F.2d 1525, 1529 (10th Cir. 1988)) (emphasis added in *Rienhardt*).  All suits that are ancillary to the probate of a will are also encompassed by the probate exception.  *See Reinhardt*, 164 F.3d at 1300 ("a claim of undue influence in the execution of a will is ancillary to a will challenge and belongs in state probate court"); *see also Mangieri v. Mangieri*, 226 F.3d 1, 2 (1st Cir. 2000) (courts view probate exception as encompassing all suits "ancillary" to probate of will); *Georges v. Glick*, 856 F.2d 971, 973 (7th Cir. 1988) (same).

In *Rienhardt*, the plaintiff brought a claim of tortious interference with expected inheritance in federal court.  164 F.3d at 1299.  Although Plaintiff pled a single claim, the Tenth Circuit construed his claim as resting upon three allegations of undue influence:  (1) that the later wills and testamentary agreement that replaced an earlier will were the product of undue influence by the defendants; (2) that the defendants exerted undue influence on the decedents to prevent them from executing new wills more favorable to the plaintiff; and (3) that the defendants exerted undue influence on one of the decedents to purchase the ranch.  *Id.* at 1300.

As to the first allegation, the Tenth Circuit held that it was ancillary to the probate proceedings, because necessary to the resolution of that allegation was the very same issue presented in the underlying probate proceedings – whether the later wills and testamentary agreement were the result of undue influence. *Id.* at 1300-01. The Tenth Circuit thus concluded that "jurisdiction by the federal district court is precluded by the probate exception" and that the claim should be brought "only in the ongoing state probate proceedings." *Id.* at 1301. The *Rienhardt* court further explained that the tort of intentional interference with inheritance is limited to inter vivos transfers of property and not to interference with a will. *Id.* The court concluded that a tort claim involving undue influence that results in interference with a will is "precisely the type of claim that is presentable in probate proceedings" and "may not be used to circumvent the jurisdiction of that court." *Id.*

As to the second and third allegations, however, the *Rienhardt* court determined that those charges were more akin to challenges to inter vivos transfers of property, which were enforceable in a state court of general jurisdiction. *Id.* As the federal district court would not interfere with the probate proceedings by hearing tort claims based on the latter two allegations, the Tenth Circuit held that the probate exception did not apply to the second and third allegations. *Id.*

### B.     Application of Probate Exception to this Case

In accordance with the *Rienhardt* opinion, federal courts must examine each claim and allegation to determine whether they are ancillary to the probate proceedings. If the claim or allegation is ancillary to the probate proceedings, then this Court's jurisdiction will be precluded by the probate exception. This Court will thus examine each count and allegation in the

6

complaint.

1. **Count 1: Fraud**

In support of their fraud claim, Plaintiffs allege that Joseph Pike did not sign the Draft Will and that the Draft Will "is the product of the undue influence and control of" Defendant. Compl. at 5. Plaintiffs also claim the Arizona Will is void as a matter of public policy. Additionally, Plaintiffs contend that Defendant "deceived Joseph J. Pike and wrongfully and illegally acquired assets from Joseph J. Pike *and* wrongfully caused him to name her as a beneficiary." *Id.* (emphasis added). Count 1, when construed in the light most favorable to Plaintiffs, thus appears to contain two distinct fraud allegations against Defendant: (1) fraud that caused Joseph Pike to wrongfully name Defendant as a beneficiary and (2) fraud that caused Joseph Pike to wrongfully transfer assets to Defendant prior to his death.

As to Plaintiff's first fraud allegation, that claim is similar to what is alleged in the underlying probate case. In their state court Petition, Plaintiffs allege that the Draft Will and Draft Trust were not signed by Joseph Pike, that the Draft Will and Draft Trust do not represent his desires, and that Defendant Parkhill unlawfully received assets of Joseph Pike's estate. *See* Def.'s Mot., Ex. 4 at 2-3. Plaintiffs seek a finding in state court that Joseph Pike did not leave a valid will. *Id.* at 3. Thus, the issue presented in the probate proceedings – whether the Draft Will and Draft Trust are valid or the result of fraud or undue influence – is the same issue that is necessary to the resolution of Plaintiffs' fraud claim before this Court. Accordingly, applying *Rienhardt*, this Court finds that the first allegation in the fraud count is ancillary to the probate proceedings and that jurisdiction over this allegation is precluded by the probate exception. *Cf. Rienhardt*, 164 F.3d at 1300-01. *See also Golden v. Golden*, 382 F.3d 348, 362-63 (3d Cir.

2004) (probate exception applies to fraud claim challenging probate of estate); *Moser v. Pollin*, 294 F.3d 335, 340-43 (2d Cir. 2002) (concluding that probate exception precluded federal court jurisdiction over plaintiff's fraud claims because case was "in substance nothing more than a thinly veiled will contest" that would interfere with the probate proceedings; finding of fraud would predetermine state court proceeding); *McKibben v. Chubb*, 840 F.2d 1525, 1530 (10th Cir. 1988) ("When a claim is brought charging undue influence or fraud in the execution of a will, that action is ancillary to the challenge of the will and belongs in the Kansas probate proceedings, not in federal court.").

 Plaintiffs nevertheless argue that the issue of whether the probate exception applies is resolved by simply determining "whether the probate court has <u>exclusive</u> jurisdiction." Pl.'s Resp. at 9-10. Plaintiffs base their argument on the passage in *Rienhardt* stating that, if the dispute is recognizable in a state court of general jurisdiction, federal diversity jurisdiction exists. *Id.* at 9 (citing *Rienhardt*, 164 F.3d at 1301). Plaintiffs point out that, under § 45-1-302 of the New Mexico Uniform Probate Code, the district court has "exclusive original jurisdiction" over "formal proceedings with respect to the estates of decedents" while the probate court and district court both have "original jurisdiction over informal proceedings for probate of a will." *Id.* at 10 (quoting NMSA 1978, § 45-1-302(A) and (C)). Because state district courts have concurrent jurisdiction over informal probate proceedings and exclusive jurisdiction over formal proceedings relating to estates, Plaintiffs contend that their case is by statute recognizable in a state district

court of general jurisdiction, and thus, the probate exception does not apply.[1]

Plaintiffs' argument fails, however, because of a basic misunderstanding of New Mexico state law.  Although it is true that formal probate proceedings are heard exclusively by the district court, it is a district court *sitting in probate*.  This distinction is pivotal.  New Mexico courts recognize that certain claims may only be brought in probate proceedings – either in probate court or in a district court sitting in probate – and not in the state courts of general jurisdiction.  *See Wilson v. Fritschy*, 2002-NMCA-105, ¶¶ 18-23, 132 N.M. 785, 790-91 (2002) (holding that disputes over validity of testamentary instruments should be resolved in probate, and that where disputes can be brought in probate, there is no separate cause of action in tort).  *See also Rienhardt*, 164 F.3d at 1301 ("Where the issue is properly within the jurisdiction of the probate court, the tort may not be used to circumvent the jurisdiction of that court.").

For example, in *Rienhardt* the Tenth Circuit explained that New Mexico's tort of intentional interference with inheritance, created by the case of *Doughty v. Morris*, 117 N.M. 284 (Ct. App. 1994), only applies to inter vivos transfers of property.  164 F.3d at 1301.  The Tenth Circuit explained that New Mexico courts recognized the tort because the behavior targeted by

---

[1]Plaintiffs, citing Article 6, section 23, of the New Mexico Constitution, also assert that New Mexico probate courts are "limited to matters in controversy of less than $3,000."  Resp. at 3 n.1 and 9 n.3.  However, the relevant portion of section 23 actually states:
> The legislature shall have power from time to time to confer upon the probate court in any county in this state jurisdiction to determine heirship in all probate proceedings, and shall have power also from time to time to confer upon the probate court in any county in this state general civil jurisdiction coextensive with the county; provided, however, that such court shall not have jurisdiction in civil causes in which the matter in controversy shall exceed in value three thousand dollars ($3,000.00) exclusive of interest and cost.

N.M. Const. Art. 6, § 23.  The plain reading of this provision demonstrates that the $3,000 limitation applies only when a probate court is granted general civil jurisdiction, not as a limitation on their powers in determining heirship.  *See In re Conley's Will*, 58 N.M. 771, 776, 276 P.2d 906, 909 (1954) (matter in controversy proviso limiting dollar amount of suits limits future legislative action relative to conferring additional civil jurisdiction on probate courts, but it does not limit initial constitutional grant of jurisdiction to probate courts).

9

the tort could not be brought in probate proceedings. The *Rienhardt* court made clear that tortious conduct involving fraud, duress, or undue influence that interfered *with a will* is the very type of claim presentable in probate proceedings. *Id.* at 1300-01. Thus, the Tenth Circuit recognized that New Mexico courts do not recognize such claims "at law," i.e., in state courts of general jurisdiction. *Id.* at 1301.

The New Mexico Court of Appeals agreed with the *Rienhardt* opinion. *Wilson*, 2002-NMCA-105, ¶¶ 13-15, 132 N.M. at 789. The *Wilson* court expressly limited the tort of interference with inheritance to situations in which an adequate remedy does not exist in probate. *Id.* In so holding, the New Mexico Court of Appeals explained:

> [T]he Probate Code should not be circumvented by calling a will contest an action in tort. . . . If we were to permit, much less encourage, dual litigation tracks for disgruntled heirs, we would risk destabilizing the law of probate and creating uncertainty and inconsistency in its place. We would risk undermining the legislative intent inherent in creating the Probate Code as the preferable, if not exclusive, remedy for disputes over testamentary documents.

*Id.* at ¶ 18-19, 132 N.M. at 790 (internal quotations omitted).

Accordingly, under New Mexico state law, tortious conduct that interferes with a will, including fraud, is a dispute cognizable only in probate proceedings, not in courts of general jurisdiction. Thus, following the standard set forth in *Rienhardt*, this Court does not have federal diversity jurisdiction over the allegations in Count 1 that relate to Defendant's alleged fraud causing Joseph Pike to name her as a beneficiary.

As to the second allegation of fraud contained in Count 1, Plaintiffs appear to be alleging that Defendant committed an act or acts of fraud that caused Joseph Pike to wrongfully transfer assets to Defendant prior to his death. This allegation pertains to inter vivos transfers of property, which, like the second and third allegations discussed in *Rienhardt*, can be addressed in a state

court of general jurisdiction, not the probate court. Thus, the probate exception does not deprive this Court of jurisdiction over the fraud allegation in Count 1 pertaining to Defendant's alleged wrongful and illegal inter vivos acquisition of assets from Joseph Pike.

### 2. **Count 2: Conversion, Unlawful Domination and Control**

The same analysis applied to Count 1 applies here. Construed liberally in favor of Plaintiffs, Count 2 sets forth two allegations: (1) conversion of, and unlawful domination and control over, the assets of the estate of Joseph Pike and (2) conversion of, and unlawful domination and control over, the assets of Joseph Pike prior to his death. As discussed above, to the extent this tort is premised on unlawful domination and control of Joseph Pike that interfered with a will, that action is properly presented in the probate proceedings, and thus, this Court does not have jurisdiction over that allegation of Count 2. *See Rienhardt*, 164 F.3d at 1300-01. However, to the extent the conversion claim alleges unlawful domination and control over the assets of Joseph Pike, wrongful acts that occurred during his lifetime, this Court does have jurisdiction to entertain that aspect of Count 2.

### 3. **Count 3: Undue Influence**

Once again, applying *Rienhardt* to Count 3 results in dismissal of this count in part for lack of jurisdiction. Count 3, like the two prior counts, contains two allegations: (1) that the Arizona Will, the Draft Will, and the Draft Trust are the result of undue influence on the part of Defendant and (2) that the Defendant exerted undue influence on Joseph Pike wrongfully causing him to convert, dissipate, and/or transfer his assets to Defendant inter vivos. The first allegation falls squarely within the probate exception. Whether the wills and trust are the result of undue influence is precisely the issue to be addressed in the probate proceedings, and thus, that

allegation is ancillary to the probate proceedings. *See Golden*, 382 F.3d at 360-61 (holding that probate exception to jurisdiction applied because plaintiffs' claim of undue influence involving will would interfere with probate proceedings); *Rienhardt*, 164 F.3d at 1300-01 (same). On the other hand, the second allegation in Count 3 is more akin to the second and third allegations in *Rienhardt*, which are enforceable in a state court of general jurisdiction. *Cf. Rienhardt*, 164 F.3d at 1301. Therefore, the probate exception precludes this Court from hearing the first allegation, but not the second allegation, in Count 3.

        4.    **Count 4: Demand for Accounting**

This court "has no power to order an accounting of an estate being probated. An accounting can only be had in the probate court having jurisdiction over the matter." *Bortz v. DeGolyer*, 904 F.Supp. 680, 684 (S.D. Ohio 1995) (citing *Waterman v. Canal-Louisiana Bank Co.*, 215 U.S. 33, 45 (1909)). Moreover, this count does not state a separate cause of action by which this Court could alone exercise jurisdiction. Consequently, this Court does not have jurisdiction to order the relief requested in Count 4, and thus, Count 4 should be dismissed.

    C.    **Failure to state a claim**

        1.    **Count 1: Fraud**

Defendant also claims that Plaintiffs have not pled Count 1 with sufficient particularity under the heightened pleading standard of Rule 9(b). This Court has already dismissed the fraud count as it pertains to the alleged interference with the wills and trust for lack of jurisdiction. Thus, this Court considers Defendant's motion to dismiss for failure to state a claim only as to the allegations of fraudulent inter vivos transfers of assets.

Federal Rule of Civil Procedure 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Rule 9(b) requires

that the plaintiff set forth the who, what, when, where, and how of the alleged fraud. *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997). In other words, a complaint alleging fraud must state the time, place, and contents of the false representation, as well as the identity of the person making the misrepresentation, and the consequences thereof. *Koch v. Koch Industries, Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000).

In this case, as to the allegedly fraudulent inter vivos transfers of property, Plaintiffs merely allege that "Paula Parkhill deceived Joseph J. Pike and wrongfully and illegally acquired assets from Joseph J. Pike." Compl. at 5. The bulk of Plaintiff's other factual allegations pertain to the alleged fraud as to the Arizona Will, Draft Will, and Draft Trust. Plaintiffs have not set forth the time, place, and contents of any false representations regarding the alleged inter vivos transfers of assets. Nor have Plaintiffs alleged the specific assets that Defendant unlawfully acquired from Joseph J. Pike during his lifetime. Count 1 simply fails to provide Defendant fair notice of Plaintiffs' claim as to the alleged fraudulent inter vivos transfers of property. The remaining allegation in Count 1 as to the fraudulent acquisition of assets from Joseph Pike should therefore be dismissed for failure to state a claim. *See Koch*, 203 F.3d at 1236-37 (upholding district court's preclusion of fraud claim where complaint merely stated broad allegations).

2.   **Count 2: Conversion**

Although Defendant did not raise the issue of failure to state a claim for conversion, given this Court's determination that the only conversion claim over which it has jurisdiction is that for conversion of assets while Joseph Pike was alive, this Court feels compelled to examine whether Plaintiffs have stated a cause of action for conversion of assets belonging to Joseph Pike.

Claims for conversion must adhere to the Rule 8(a) pleading standard, not Rule 9(b). *See Executive Photo, Inc. v. Norrell*, 756 F.Supp. 798, 800 (S.D.N.Y. 1991). A motion to dismiss is

only proper if the plaintiff does not sufficiently plead a set of facts that would entitle him to relief. *Smith v. Colorado Dept. of Corrections*, 23 F.3d 339, 340 (10th Cir. 1994). A court should not grant a motion to dismiss for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In ruling on a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff and take the allegations asserted in the complaint as true. *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). Bearing in mind these legal standards, this Court determines that the complaint does not state a viable cause of action for conversion.

"Conversion is the unlawful exercise of dominion and control over property belonging to another in defiance of the owner's rights, or acts constituting an unauthorized and injurious use of another's property, or a wrongful detention after demand has been made." *Security Pacific Financial Services, a Div. of Bank of America, FSB v. Signfilled Corp.*, 1998-NMCA-046, ¶ 15, 125 N.M. 38, 43 (1998). The elements of the tort of conversion are that (1) the plaintiff had the right to possess the personal property; (2) the defendant exercised dominion or control over the property; and (3) the defendant refused to return the property to plaintiff in defiance of the plaintiff's rights to the property. *See AAA Auto Sales & Rental, Inc. v. Security*, 114 N.M. 761, 763 (Ct. App. 1992); *Nosker v. Trinity Land Co.*, 107 N.M. 333, 337-38 (Ct. App. 1988). As to the first element, the plaintiffs must show a possessory or ownership interest in the property at the time of the alleged conversion. *See Nosker*, 107 N.M. at 338.

In this case, the only allegation in Count 2 over which this Court has jurisdiction is that for conversion of the assets of Joseph Pike during his lifetime, as opposed to the estate of Joseph Pike. However, Plaintiffs cannot meet the first element of a conversion claim limited to inter

14

vivos property transfers, namely that the plaintiff had the right to possess the personal property at the time of the alleged conversion. Plaintiffs cannot possibly meet their burden, as the assets of Joseph Pike, while he was alive, belonged to Joseph Pike, not Plaintiffs. Plaintiffs therefore cannot state a claim for conversion as a matter of law on the only remaining allegation in Count 2 over which this Court has jurisdiction. Consequently, this Court must dismiss Count 2 in its entirety.

### 3. **Count 3: Undue Influence**

As to the allegation in Count 3 that Defendant unduly influenced Joseph Pike, causing him to dissipate or transfer assets during his lifetime to Defendant, the Court finds that this allegation is ambiguous. Given the focus of the allegations in this count on undue influence in the execution of the wills and trust, it is unclear whether Plaintiffs additionally intended to claim that Defendant unduly influenced Joseph Pike to dissipate or transfer assets during his lifetime to Defendant. Therefore, Plaintiffs are given the opportunity to file an amended complaint as to Count 3 in order to clarify the nature and elements of the allegation in Count 3 over which this Court has jurisdiction. Plaintiffs must file their amended complaint no later than 30 days after the filing of this memorandum opinion and order or suffer dismissal of the remaining allegation in Count 3 for failure to unambiguously state whether Plaintiffs are alleging undue influence only as to the execution of the wills and trust or whether Plaintiffs are also alleging some sort of undue influence cause of action as to the inter vivos dissipation or transfer of property from Joseph Pike to Defendant.

### D. **Amount in Controversy**

This Court's ruling that it has jurisdiction only over the allegations that pertain to the allegedly improper inter vivos transfers of property raises an additional jurisdictional issue --

15

whether the jurisdictional amount in controversy element is met.  A court may raise this issue sua sponte, as a court has a continuing duty to ensure that jurisdiction is proper.  *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995).

The amount in controversy is determined at the time the complaint was filed.  *Watson v. Blankenship*, 20 F.3d 383, 387 (10th Cir. 1994).  The party asserting jurisdiction has the burden to show it is not a legal certainty that the claim is less than the jurisdictional amount.  *Id.* at 386.  Even if a court dismisses certain claims, which reduces the amount of recovery, it does not necessarily follow that jurisdiction has been destroyed.  *Id.* at 387.  "A distinction must be made, however, between subsequent events that change the amount in controversy and subsequent revelations that, in fact, the required amount was or was not in controversy at the commencement of the action."  *Id.* (internal quotations omitted).  Subsequent events that change the amount in controversy will not divest the court of jurisdiction.  *Grinnell Mut. Reinsurance Co. v. Shierk*, 121 F.3d 1114, 1116 (7th Cir. 1997).

This Court has determined that the probate exception applies to deprive this Court of jurisdiction to hear Plaintiffs' claims as they relate to interference with a will.  Although the Court made this ruling subsequent to the filing of the complaint, this Court did not have jurisdiction over the claims even at the outset of the litigation.  As jurisdiction never attached as to those claims, the dismissal of those claims for lack of jurisdiction is more akin to a subsequent revelation than to a subsequent event.  Consequently, this Court must determine whether the remaining claims as to inter vivos property transfers meet the amount in controversy requirement.      It is not clear from the facts alleged in the complaint whether the amount in controversy for the particular claims over which this Court has jurisdiction exceeds $75,000.  Although the amount in controversy may have exceeded $75,000 as to all claims originally pled, the complaint does not state whether the

16

allegations concerning allegedly wrongful inter vivos transfers of property result in damages in excess of $75,000.  Accordingly, pursuant to their burden, Plaintiffs must show the Court that it is not a legal certainty that the claims over which this Court has jurisdiction is less than the jurisdictional amount at the time the complaint was filed.  Plaintiffs must make their showing no later than 30 days from the filing of this memorandum opinion and order.

### E. *Colorado River* Doctrine

Defendant also argues that this Court should exercise its discretion and stay this case based on the *Colorado River* Doctrine.  That doctrine provides that a federal court may defer a suit based on judicial economy concerns when pending state litigation will resolve the issues presented in the federal case.  *Rienhardt*, 164 F.3d at 1302 (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-20 (1976)).  The *Colorado River* Doctrine may only be applied in "exceptional" circumstances.  *Id.* at 1303.  This case does not present those exceptional circumstances.  As discussed above, the allegations over which this Court has jurisdiction are not ancillary to the probate proceedings, and therefore, the pending state litigation will not resolve those issues.  Thus, the *Colorado River* Doctrine factors do not strongly counsel against jurisdiction.  *Cf. Rienhardt*, 164 F.3d at 1303 (applying *Colorado River* Doctrine factors and holding that district court did not abuse its discretion in refusing to abstain from hearing case).

### F. Venue

Defendant also requests, if this case survives the motion to dismiss, that venue should be transferred to the Las Cruces Division.  Defendant's request is noted; however, this Court will deny this motion pending Plaintiffs' compliance with the orders contained herein and the Court being convinced that it has jurisdiction over the remaining claim.

**G.      Coordination of this case and state case**

Finally, Defendant requests that this Court "coordinate preparation of the federal court iteration of this case with the state court iteration." Def.'s Mot. at 1. Defendant's request is too broad and ambiguous to be granted at this time. Should specific discovery and scheduling issues arise in the future, the Court will address them on an issue-by-issue basis as they arise.

**III.    Conclusion**

In sum, the Court dismisses the allegations in Counts 1, 2, and 3 pertaining to interference with the Draft Will, the Arizona Will, and/or the Draft Trust for lack of jurisdiction. Additionally, Count 4 is dismissed in its entirety for lack of jurisdiction. The remaining allegation of fraudulent inter vivos transfers of property from Joseph Pike to Defendant set forth in Count 1 is dismissed for failure to state a claim under the heightened pleading standard for fraud claims. As to the remaining allegation in Count 2 for conversion of assets belonging to Joseph Pike, this Court dismisses that allegation for failure to state a claim as a matter of law. Thus, Counts 1 and 2 are dismissed in their entirety. The only allegation that will remain following entry of this memorandum opinion and order is the allegation in Count 3 that Defendant unduly influenced Joseph Pike to convert, dissipate, and/or transfer assets during his lifetime to Defendant.

IT IS THEREFORE ORDERED that:

1.       Defendant's motion to dismiss Counts 1, 2, and 4 of the complaint is GRANTED.

2.       Defendant's motion to dismiss Count 3 of the complaint is GRANTED in part and DENIED in part. Defendant's motion is GRANTED as to the allegations in Count 3 about undue influence in the execution of the Arizona Will, the Draft Will, and the Draft Trust, which are dismissed for lack of jurisdiction. Defendant's motion is DENIED as to the allegation in Count 3

about undue influence in the inter vivos dissipation and/or transfer of assets of Joseph J. Pike, which is not dismissed.

3.      Defendant's motion to stay this case pending resolution of the state case of *In the Matter of the Estate of Joseph J. Pike, Deceased*, No. PB 2003-30, is DENIED.

4.       Defendant's motion to transfer venue to the Las Cruces Division is DENIED.

5.      Defendant's motion to coordinate preparation of this case with the state court case is DENIED.

6.      Plaintiffs are granted leave to amend their complaint to clarify the nature and elements of their remaining cause of action in Count 3 no later than 30 days after the filing of this memorandum opinion and order or suffer dismissal of the remaining allegation in Count 3 for the reasons discussed above.

7.      Plaintiffs are ordered to show the Court that it is not a legal certainty that the claims over which this Court has jurisdiction is less than the jurisdictional amount at the time the complaint was filed.  Plaintiffs are ordered to make their showing no later than 30 days from the filing of this memorandum opinion and order.

**It Is So Ordered.**

                                        s/Electronically Signed
                                        SENIOR UNITED STATES DISTRICT JUDGE